# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAVID BURFORD GREENE,** | * | |
| **Plaintiff** | | |
| v. | * | CIVIL ACTION NO. RWT-11-535 |
| **BOBBY SHEARIN,** *et al.*, | * | |
| **Defendants** | | |

********

## MEMORANDUM OPINION

Before the Court are Defendants' Bobby Shearin and Bruce Liller's Motion to Dismiss, or in the alternative, Motion for Summary Judgment (ECF No. 30) and Plaintiff's response. ECF No. 36, 37, 39, 40, 41, 42, & 43.[1] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

## Background

Plaintiff alleges that he is subjected to cruel and unusual punishment and unable to freely exercise his religion while housed at the North Branch Correctional Institution (NBCI) where he is "segregated from African American custody, staff and authorities." He further alleges that he suffers from severe mental and emotional distress and has been denied sufficient mental health treatment, and indicates that it is necessary he be transferred to the Correctional Mental Health Center (CMHC-J) in Jessup, Maryland for appropriate care. *See* ECF No. 1.

---

[1] Plaintiff has filed a Motion to Set Trial. ECF No. 44. For the reasons that follow, no trial is necessary. Plaintiff has also filed his fifth and six requests for appointment of counsel. ECF Nos. 45 & 47. In the exercise of its discretion the Court again finds the appointment of counsel unnecessary. Plaintiff is able to adequately articulate his claims and the case is not complex. Both motions will be denied.

## **Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleadings," but rather must "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). This Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

## Discussion

### A. Medical Care

The Eighth Amendment prohibits unnecessary and wanton infliction of pain by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a Plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See United States v. Clawson*, 650 F.3d 530, 537 (4th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There is no essential distinction between the right to medical care for physical ailment and the right to psychiatric or psychological care for mental ailments. *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977). Plaintiff, as an incarcerated person, is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial. *Id.* at 47-48. The *Bowring* court further concluded that the right to such treatment is based upon the essential test of medical necessity and not upon a belief is that care is merely desirable. *Id.* at 48. Disagreements between an inmate and a physician over the inmate's proper care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Clawson,* 650 F.3d at 538.

Plaintiff alleges that he suffers from a variety of symptoms that are characteristic of mental disease and he can only be sufficiently treated at the CHMC-J. *See* ECF Nos. 1, 33. Plaintiff further alleges that the segregation he experiences at NBCI exacerbates his mental health problems.[2] *Id*.

During most of 2009 Plaintiff was housed at CHMC-J. Thereafter, he was returned to NBCI because he was found to not need long-term placement at CHMC-J.[3] Indeed, on April 29, 2010, J. Holwager, Ed. D., Licensed Psychologist, and member of the NBCI Psychology Department, prepared a case management report indicating Plaintiff was psychologically stable and could be removed from Administrative Segregation and placed in a Special Housing Unit. *See* ECF 30-5. On April 30, 2011, Bruce Liller, MS, LCPC, Acting Chief of Psychology at NBCI, states that Plaintiff is not eligible for transfer to CMHC-J because he is not in acute mental health distress. *See* ECF No. 30-3. Liller notes that although Plaintiff is unhappy with his assignment to NBCI he is functioning well in the Special Needs Unit there. *Id.* Plaintiff's medical records reveal that Plaintiff was considered to be manipulative in his claim of mental illness in order to effect a change in housing from NBCI. *Id.*

Plaintiff's allegation that he can only receive proper mental health care at CMHC-J amounts to a disagreement with the judgment of his health care providers.[4] Such disagreement with a course

---

[2] To the extent Plaintiff maintains that he is receiving inadequate mental health care that extends beyond his demand for transfer to CMHC-J, such a claim is not properly before the Court. If Plaintiff believes he is otherwise being denied proper mental health care, he is free to file a new complaint.

[3] Plaintiff indicated that he arrived at NBCI on April 27, 2007. He also indicates he was previously treated at the CMHC-J for fourteen and a half months.

[4] Plaintiff claims that because the staff at NBCI are overwhelming Caucasian and Plaintiff is

of treatment does not provide the framework for a federal civil rights complaint. *See Kulak v. City of New York*, 88 F.3d 63,74 (2d Cir. 1996).

## B. Transfer

Similarly, Plaintiff's right to due process is not violated by his being housed at NBCI. It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally

---

African-American, Plaintiff endures "segregation" that adversely affects his mental health. *See* ECF No. 1. Plaintiff's allegations find no support in the record. Moreover, Plaintiff's claim regarding the racial make-up of the prison staff does not state an Eighth Amendment claim. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Id*. In this regard the Fourth Circuit states:
> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and that "*subjectively* the 'officials act[ed] with a sufficiently culpable state of mind.'"

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original, citation omitted). To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991). Defendants' refusal to transfer Plaintiff, which was based on an appropriate psychological evaluation, fails to establish a culpable state of mind. Furthermore, there is no objective evidence demonstrating injury by housing Plaintiff at NBCI rather than at his preferred location.

protected liberty interest). Plaintiff does not have a right to be housed in a particular prison or participate in a particular program. In the present case, medical personnel have determined that Plaintiff can be safely and appropriately housed in his current location and there is no medical necessity that he be transferred to CMHM-J as he has requested. Accordingly, Plaintiff's allegations regarding transfer must be dismissed.

**C. Religion**

Plaintiff states that his religion is "Good Mental Health." One of the principles of that religion is "mental preservation and its meaning is integrity which naturally coincides with the logic of integration." Plaintiff alleges that his being housed at NBCI and "Good Mental Health" are not compatible.

The Free Exercise Clause of the First Amendment is applicable to the states by virtue of the Fourteenth Amendment. *See Employment Division v. Smith*, 494 U.S. 872, 876-77 (1990). The Free Exercise Clause provides that "Congress shall make no law ... prohibiting the free exercise" of religion. U.S. Const. Amend. I. A prisoner, however, does not enjoy the full range of freedoms as those not incarcerated; rather, state action violates a prisoner's constitutional rights if it burdens a prisoner's religious rights and is not reasonably related to a legitimate penological interest. *See Turner v. Safley,* 482 U.S. 78, 89 (1987); *accord O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). Plaintiff must show that his claims are rooted in religious belief and not in "purely secular" concerns. *See Wisconsin v. Yoder*, 406 U.S. 205, 215, 216 (1972). Plaintiff has failed to demonstrate that the belief that he can only fairly be supervised by African American prison staff is based on a sincere religious belief. Beliefs which are philosophical and personal, rather than religious, are not protected by the Free Exercise Clause.

*Id*. Plaintiff has failed to reveal any pertinent details concerning the religion "Good Mental Health." To the contrary, it appears that the concept of "Good Mental Health" is not a religious belief but rather a purely secular one. While it is well settled that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection," *Thomas v. Review Board of the Indiana Employment Security Division*, 450 U.S. 707, 714 (1981), in the instant case, Plaintiff has offered no evidence that his desire to be supervised by African-Americans is a tenet of his religion. He has, in fact, offered no information whatsoever about his religion. Further, the record before the Court demonstrates that Plaintiff's mental health, and thus his avowed religious observance, is not adversely impacted by his placement at NBCI.

### D. Racial Discrimination

To the extent Plaintiff claims Defendants' actions rose to the level of racial discrimination, it is clear that inmates have a Constitutional right to be free from discrimination on the basis of race. *See Lee v. Washington*, 390 U.S. 333 (1968). However, "absent some factual evidence the court will not look behind the determinations of prison officials on mere accusations that they are racially motivated." *Chapman v. Reynolds*, 378 F. Supp. 1137, 1140 (W.D. Va. 1974); *see also Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (conclusory allegation of racial discrimination in confiscation of excess property insufficient to state claim because no allegation that prisoners of another race were allowed to retain more property); *Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (conclusory allegations of racial discrimination insufficient to state claim). A prisoner must show more than disparate impact. *See Washington v. Davis*, 426 U.S. 229, 240 (1976). A mere conclusory averment, as provided by Plaintiff in the instant case, is insufficient to withstand a

dispositive motion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1085 (4th Cir. 1979). For this reason, Plaintiff's racial discrimination claim fails.

## **Conclusion**

Defendants' Motion for Summary Judgment shall be granted as to all claims. A separate order follows.

Date: December 19, 2011                          /s/
                                                       ROGER W. TITUS
                                    UNITED STATES DISTRICT JUDGE